Karen King Mitchell, Chief Judge
Leontae Hill appeals the denial of his declaratory judgment petition against the Department of Corrections (DOC), which sought a declaration that §§ 558.019 and 556.061 do not require Hill to serve a mandatory minimum term of 85% of his life sentences for first-degree assault of a law enforcement officer, committed on January 1, 2000. Hill also requested that the court order DOC to remove the 85% requirement from his sentences. Because the applicable statutes do require Hill to serve a minimum of 85% of his sentence, we affirm.
Background
At 12:30 a.m. on January 1, 2000, four officers who were on patrol heard automatic gunfire and drove toward its source. Hill v. State , 181 S.W.3d 611, 614 (Mo. App. W.D. 2006). They saw Hill and two other men on the steps of an apartment building, where the men had apparently been trying to shoot out streetlights. Id. As the officers passed, Hill advised one of the other men, " 'If they ride back through[,] I'm going to get them,' and he [said] that his New Year's resolution was to shoot the police." Id. "When the police *98 circled back, ... Hill fired his automatic weapon some thirty times at the car, hitting [one o]fficer ... in the head and [another o]fficer ... in the neck." Id.
The State charged Hill with four counts of first-degree assault of a law enforcement officer and four counts of armed criminal action. Id. at 615. On December 20, 2001, the jury found Hill guilty as charged, and, on February 11, 2002, the trial court sentenced Hill to consecutive terms of life imprisonment for each count of assault of a law enforcement officer and fifteen years' imprisonment for each count of armed criminal action. Id. His convictions and sentences were affirmed on appeal. State v. Hill , 114 S.W.3d 310 (Mo. App. W.D. 2003).
Hill then filed a post-conviction relief motion, arguing that three of his four convictions for armed criminal action violated his right to be free from double jeopardy and that his trial counsel was ineffective for failing to call a witness and request instructions on lesser-included offenses. Hill , 181 S.W.3d at 615, 617. This court vacated three of Hill's four armed criminal action convictions upon concluding that they violated his right to be free from double jeopardy but rejected his claims of ineffective assistance of counsel. Id. at 615-21.
In 2016, while serving his sentences, Hill was notified by DOC that his sentences would be subject to an 85% mandatory minimum time served before he would become parole eligible. Shortly thereafter, Hill filed a petition for declaratory judgment, seeking a declaration that §§ 558.019 and 556.061 did not require him to serve a mandatory minimum term of 85% of his life sentences for first-degree assault of a law enforcement officer and requesting that the court order DOC to remove the 85% requirement from his sentences. Hill argued (1) that, at the time he committed his crimes, first-degree assault of a law enforcement officer did not constitute a "dangerous felony" subject to a requirement that the offender serve a mandatory minimum of 85% before becoming parole eligible and (2) that DOC could not apply a 2003 amendment to § 556.061, which specifically added "assault of a law enforcement officer in the first degree" to the definition of "dangerous felony." In 2017, Hill filed an amended petition, reasserting his declaratory judgment request and arguing, in the alternative, for a writ of habeas corpus on the ground that "his trial counsel and the sentencing court, at the time of the pretrial plea offer and at the time of sentencing, believed that assault of a law enforcement officer in the first degree was not an eighty-five percent crime." After filing an answer to the amended petition, DOC moved for judgment on the pleadings. The trial court granted the request for judgment on the pleadings as it pertained to the declaratory judgment action and denied the petition for a writ of habeas corpus. Hill appeals the adverse judgment on his declaratory judgment petition.[1]
Standard of Review
"The appellate court reviews the trial court's grant of ... a motion for *99 judgment on the pleadings de novo. " Barrett v. Greitens , 542 S.W.3d 370, 375 (Mo. App. W.D. 2017). "In determining whether a motion to dismiss should have been granted, the appellate court reviews the petition, in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." Id. at 375-76 (quoting Mo. Mun. League v. State , 489 S.W.3d 765, 767 (Mo. banc 2016) ). "A motion for judgment on the pleadings is properly granted if, from the face of the pleadings, the moving party is entitled to judgment as a matter of law." Id. at 376.
Analysis
Hill raises three claims on appeal. First, he argues that the trial court erred in granting judgment on the pleadings in favor of DOC because he should not be required to serve 85% of his sentence for first-degree assault of a law enforcement officer. Second, he argues that the court erred in granting judgment on the pleadings in favor of DOC because applying this court's decision in Mann v. McSwain , 526 S.W.3d 287 (Mo. App. W.D. 2017) (rejecting the very claim raised in Hill's first point on appeal) violates the doctrine of fundamental fairness in Hill's situation. And, finally, Hill argues that DOC was not entitled to judgment as a matter of law because there is a genuine issue of material fact regarding whether Hill was misinformed about his parole eligibility.
A. Hill is required to serve at least 85% of his sentences.
Hill committed his crimes in 2000. At that time, § 558.019.3, RSMo. Supp. 1998, provided:
[A]ny offender who has pleaded guilty to or has been found guilty of a dangerous felony as defined in section 556.061, RSMo., and is committed to the department of corrections shall be required to serve a minimum prison term of eighty-five percent of the sentence imposed by the court or until the offender attains seventy years of age, and has served at least forty percent of the sentence imposed, whichever occurs first.
Section 556.061(8), RSMo. Supp. 1999, defined "dangerous felony" as "the felonies of arson in the first degree, assault in the first degree , forcible rape, forcible sodomy, kidnapping, murder in the second degree and robbery in the first degree." (Emphasis added.) Hill was convicted on December 20, 2001, and he was sentenced on February 11, 2002. The legislature amended the definition of "dangerous felony" in 2003 to expressly include, among other crimes, "assault of a law enforcement officer in the first degree."
In his first point, Hill argues that, because the definition of "dangerous felony" in § 556.061(8), RSMo. Supp. 1999, did not expressly include first-degree assault of a law enforcement officer, the provision of § 558.019.3, RSMo. 1998, requiring offenders convicted of "dangerous felon[ies]" to serve a minimum of 85% of their sentence before becoming parole eligible, cannot be applied to him. We disagree.
We addressed this exact issue just last year in Mann v. McSwain , 526 S.W.3d 287 (Mo. App. W.D. 2017). In Mann , the defendant was convicted of first-degree assault on a law enforcement officer in 2002. Id. at 288. The Board of Probation and Parole, after initially granting the defendant parole, rescinded its order before his release upon determining that first-degree assault of a law enforcement officer constituted a "dangerous felony," requiring the defendant to serve 85% of his sentence. Id. The defendant petitioned for a writ of mandamus in the circuit court, seeking to compel the Board to reinstate his parole release date; when the circuit court denied *100 the petition, the defendant appealed. Id. This court determined that, contrary to the defendant's argument, "assault of a law enforcement officer in the first degree constitutes a type of 'assault in the first degree,' and therefore [fell] within the statutory definition of 'dangerous felony' " in the 1999 version of the statute. Id. at 290. Thus, under the holding in Mann , Hill's claim is without merit.
Recognizing the negative implications of Mann on his claim, Hill argues that we should either reconsider Mann or find it distinguishable. We decline both invitations.
Hill first argues that Mann was incorrectly decided insofar as it unnecessarily employed statutory interpretation where the plain language was clear. But the only application of statutory interpretation in Mann was in the argument made by the defendant, when he argued that the 2003 amendment adding first-degree assault of a law enforcement officer implied that the offense was not previously included in the definition of "dangerous felony." This court's analysis was merely responsive to that argument. This court rejected the defendant's argument, holding that (1) because first-degree assault was a lesser-included offense of first-degree assault of a law enforcement officer, a conviction for first-degree assault of a law enforcement officer necessarily included a determination of guilt of first-degree assault; (2) the legislative history of § 556.061 's definition of "dangerous felony" reflected the definition's application to categories of offenses rather than specifically designated offenses; and (3) the interpretation proposed by the defendant would lead to an absurd result wherein a person convicted of a more serious offense (first-degree assault of a law enforcement officer) would have no restrictions on parole eligibility while a person convicted of a less serious offense (first-degree assault) would be required to serve at least 85% of the sentence imposed. The reasoning in Mann remains sound.
Hill further argues that Mann failed to account for limiting language in the 2003 statutory amendments. Specifically, he argues that "the 2003 amendments to Sections 556.061 and 558.019 require an 85% minimum term for sentences for assault of a law enforcement officer in the first degree 'occurring on or after August 28, 2003. ' "[2] But the court in Mann was not applying the current definition of "dangerous felony" retroactively; rather, the court in Mann was relying on the definition in force at the time of the defendant's offenses, and it concluded that the defendant's offenses fell within that definition. Mann , 526 S.W.3d at 290, 292 n.5 (noting that "[t]he Board has not argued on appeal that the 2003 amendment to § 556.061(8) applies to Mann, and we therefore need not address the issue"). As such, § 558.019.9's limitation on the applicable scope of that section was irrelevant to the analysis. Thus, it is not surprising that the court in Mann did not consider it. Here, as in Mann , we need not consider whether the current definition of "dangerous felony" may be applied to Hill's sentences, as Hill's offenses fall within the definition of "dangerous felony" applicable at the time *101 of their commission.[3]
Finally, Hill seeks to distinguish Mann by arguing that, in Mann , there was some awareness by those involved that the 85% rule would apply to the sentences at issue, while here, the record suggests that no one anticipated that Hill would be required to serve at least 85%. Assuming the truth of Hill's claim that no one involved in his criminal proceedings anticipated application of the 85% rule to his sentences, this fact is not determinative. Though, in Mann , we referenced the prosecutor's assertion that the defendant would be subject to the 85% rule, we did not rely on that fact to reach our holding, and the awareness-or lack thereof-by those involved regarding application of the 85% rule does not change the outcome here. The sole question before this court is whether Hill's convictions for first-degree assault of a law enforcement officer fall within the definition of "dangerous felony" provided in § 556.061(8), RSMo. Supp. 1999. Our analysis in Mann dictates that the answer to that question is yes. And whether anyone involved in Hill's criminal proceeding was aware of this fact is simply irrelevant to the question at hand.[4]
Because Hill's convictions for first-degree assault of a law enforcement officer fall within the applicable definition of "dangerous felony," as we held in Mann , DOC has properly determined that he is subject to the 85% rule, and the trial court did not err in granting judgment on the pleadings in favor of DOC.
Point I is denied.
B. Applying the Mann decision to this case does not violate the doctrine of fundamental fairness.
In his second point on appeal, Hill argues that retroactively applying our decision in Mann to this case violates the doctrine of fundamental fairness because no one involved in Hill's case believed that his offenses were subject to the 85% rule. We disagree.
"Generally, a change in the law by judicial decision is to be given retroactive effect." Geran v. Xerox Educ. Servs., Inc. , 469 S.W.3d 459, 465 (Mo. App. W.D. 2015). "Two exceptions exist to the general rule of retroactivity." Id. "The first exception is found when the change pertains to procedural as opposed to substantive law." Id. (quoting Sumners v. Sumners , 701 S.W.2d 720, 723 (Mo. banc 1985) ). "The second exception turns on the issue of fundamental fairness and is often expressed *102 as a question of reliance." Id. (quoting Sumners , 701 S.W.2d at 723 ). "If the parties have relied on the state of the decisional law as it existed prior to the change, courts may apply the law prospectively-only in order to avoid injustice and unfairness." Id. (quoting Sumners , 701 S.W.2d at 723 ).
Here, Hill seeks to apply the second exception to the general rule regarding retroactive application. But there are two flaws in Hill's argument. First and foremost, Mann did not change the law. Hill has not pointed to a single case interpreting the definition of "dangerous felony," as it existed at the time of Hill's offenses, in a manner different from the interpretation applied in Mann . Cf. State v. Bazell , 497 S.W.3d 263, 267, 267 n.3 (Mo. banc 2016) (interpreting § 570.030.3 in a manner directly contrary to a prior decision in State v. Passley , 389 S.W.3d 180 (Mo. App. S.D. 2012) ). And the absence of such pre-existing and conflicting case law raises the second flaw in Hill's claim-he cannot demonstrate the reliance necessary to establish fundamental unfairness based on case law that does not exist. At best, Hill might be able to establish that individuals involved in his criminal matter relied on their own interpretation of § 556.061(8) that ultimately conflicted with this court's holding in Mann , but that is not the kind of reliance necessitating application of the fundamental fairness exception. Furthermore, that kind of reliance is not relevant to Hill's declaratory judgment action, wherein the sole question before the court was whether Hill's offenses properly subjected him to the 85% rule in § 558.019.3, RSMo. Supp. 1998.[5]
Accordingly, Point II is denied.
C. Whether trial counsel believed or conveyed that Hill's crimes were subject to the 85% rule is a matter for the habeas action.
In his third and final point, Hill argues that the trial court erred in granting DOC's motion for judgment on the pleadings because there existed a genuine issue of material fact regarding whether Hill was misinformed as to his parole eligibility. DOC argues that this claim is not cognizable in this appeal because it is a collateral attack on the validity of Hill's convictions and sentences and, therefore, a matter for the habeas action. We agree with DOC.
"The Declaratory Judgment Act 'is neither a general panacea for all legal ills nor a substitute for existing remedies. It is not to be invoked where an adequate remedy already exists.' " Charron v. State , 257 S.W.3d 147, 153 (Mo. App. W.D. 2008) (quoting Cooper v. State , 818 S.W.2d 653, 654 (Mo. App. W.D. 1991) ). "The post-conviction rules provide the exclusive remedy for challenges to the validity of a sentence or conviction on grounds of violation of state statute or the federal or state constitutions." Id. "If an inmate fails to file a timely motion for post-conviction relief, he 'may merit habeas relief by demonstrating cause for the failure to timely raise the claim at an earlier juncture and prejudice resulting from the error that forms the basis of the claim.' " Id. (quoting State ex rel. Taylor v. Moore , 136 S.W.3d 799, 801 (Mo. banc 2004) ). "Thus, at the very least, a declaratory judgment action is improper to challenge the validity of a sentence or conviction where any of these avenues is available." Id.
Here the question of whether the court, trial counsel, or Hill were aware that his *103 sentences would be subject to the 85% rule of § 558.019.3 were all matters raised in Hill's petition for a writ of habeas corpus and addressed by the special master appointed in WD81483. Because Hill's habeas action provides a potential avenue for relief on this claim, raising it on appeal in his declaratory judgment action is improper. Accordingly, we decline to address Hill's Point III, as it is not cognizable in this appeal.
Conclusion
As DOC has determined, Hill's offenses are subject to the 85% rule of § 558.019.3. Thus, the trial court committed no error in granting DOC's motion for judgment on the pleadings in Hill's declaratory judgment action.[6] The trial court's judgment is affirmed.
Victor C. Howard and Anthony Rex Gabbert, Judges, concur.

Hill also filed a new petition for writ of habeas corpus with this court in case number WD81483, arguing that his "trial counsel was ineffective for misinforming [Hill] that the four counts of assault of a law enforcement officer in the first degree were not 85% crimes" and that, "[w]hen determining [Hill's] sentences, the sentencing court did not know that assault of a law enforcement officer in the first degree was a dangerous felony, requiring [Hill] to serve an 85% mandatory minimum prison term for such sentences." In this appeal, Hill filed a motion requesting this court to take judicial notice of the files in WD81483. That motion was taken with the case and is now granted.

Section 558.019.9 states that "[t]he provisions of this section shall apply only to offenses occurring on or after August 28, 2003." (Emphasis added.) But there is nothing equivalent in § 556.061, where the definition of "dangerous felony" is found. Section 556.061 is not only a different section but also an entirely different chapter. It seems odd, at best, to apply a subsection from chapter 558-that expressly limits its application to the section in which it appears -to chapter 556.

In State v. Cannafax , 344 S.W.3d 279, 291 (Mo. App. S.D. 2011), the Southern District held that "a modification to the definition of 'dangerous felony' that limits [an inmate's] opportunity for early release may lawfully be applied to him [regardless of] whether ... sufficient evidence showed the offenses were committed after the 2003 amendment." In that case, the defendant argued that his crimes of first-degree statutory rape and first-degree statutory sodomy were not part of the definition of "dangerous felony" at the time of his offenses and, because they were not added until the 2003 amendment, the 85% rule could not be applied to him. Id. at 290-91. In State v. Tivis , 933 S.W.2d 843, 848 n.3 (Mo. App. W.D. 1996), however, this court held that "the amended definition of 'dangerous felony' which occurred after [commission of] the underlying offense [may not be used] for the purpose of determining whether or not [an inmate] is subject to sentencing enhancement." Here, we need not decide whether the current definition of "dangerous felony" applies to Hill's sentences, as we have concluded, in accordance with the holding in Mann v. McSwain , 526 S.W.3d 287 (Mo. App. W.D. 2017), that his offenses constituted dangerous felonies as defined at the time of their commission.

While this alleged lack of awareness may be relevant in Hill's habeas action in WD81483, our sole concern in this appeal is the correctness of the declaratory judgment ruling.

At best, this kind of reliance might be relevant in Hill's habeas action in WD81483, but that is not an issue we need to determine in his appeal from the grant of judgment on the pleadings in his declaratory judgment action.

This decision does not-and should not be interpreted to-address any of the matters that are the subject of Hill's concurrent habeas action in WD81483.